UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD ALBERT STENBERG,

     Plaintiff,

v.

SUZANNE GROFF, et al.,

     Defendants.

Case No. 24-13112
Magistrate Judge Kimberly G. Altman
Honorable Laurie J. Michelson

---

## ORDER OVERRULING PLAINTIFF'S OBJECTIONS [60] AND ADOPTING THE REPORT AND RECOMMENDATION [48]

Edward Albert Stenberg filed this *pro se* civil rights case against twelve Defendants—primarily medical personnel and other staff at the Thumb Correctional Facility in Lapeer, Michigan. (ECF No. 14.) He alleges that prison medical staff violated his Eighth Amendment right to be free from cruel and unusual punishment by being deliberately indifferent to his serious medical needs. In January of 2025, he sought a preliminary injunction requesting that the Defendants not be allowed to participate in his future medical care and that they instead take him to other pain management, neurology, and gastroenterology specialists outside the prison. (ECF No. 12.) Recently, Magistrate Judge Kimberly G. Altman denied the preliminary injunction request (ECF No. 48), and Stenberg timely objected (ECF No. 60). For the reasons provided below, the Court OVERRULES Stenberg's objections and ADOPTS the report and recommendation.

## I.

### A.

In 2008, a state court jury convicted Edward Stenberg of first-degree murder, felon in possession of a firearm, and commission of a felony with a firearm. *People v. Stenberg*, No. 2007-217760 (Oakland Cnty. Cir. Ct. 2007). He was sentenced as a fourth habitual offender to life imprisonment. Since being imprisoned, Stenberg's health has deteriorated. He suffers from several medical problems including, but not limited to: spinal injuries, stage four fibrosis, liver disease, stomach problems, chronic skin cancer, and COPD. (ECF No. 14, PageID.1171–1173.) But, he claims, he has not received medical care for many of these aliments.

So, on November 22, 2024, Stenberg filed a 533-page complaint, alleging that this inadequate medical treatment violates his constitutional rights. (ECF No. 1.) The next day, the Court dismissed the complaint and ordered Stenberg "to file a First Amended complaint that complies with Federal Rule of Civil Procedure 8." (ECF No. 10, PageID.623.) On January 15, 2025, Stenberg filed his First Amended complaint against ten named defendants (Suzanne Groff, Margaret Ouellette, James Blessman, Carmen McIntyre, Mary Howard, Ricky Coleman, Teri Massey, Heidi Washington, Jeffery Bomber, Wellpath Health Care), and two John Doe Defendants. (ECF No. 14.) Along with his First Amended complaint, he also filed a motion for a preliminary injunction (ECF No. 12) and a motion to appoint counsel (ECF No. 13).

While the United States Marshal Service was in the process of effectuating service on the Defendants, Stenberg filed a motion to compel the Court to issue a

ruling on his preliminary injunction request (ECF No. 18). On March 20, Defendants Bomber, Coleman, Massey, and Wellpath appeared in the case and immediately filed a suggestion of bankruptcy notifying the Court of Wellpath's bankruptcy proceedings (ECF No. 20), along with an emergency motion to extend the bankruptcy stay to Bomber, Coleman, and Massey, as employees of Wellpath (ECF No. 21). The next day, all pretrial matters in this case were referred to Magistrate Judge Altman. (ECF No. 14.)

Upon receiving the case, Judge Altman: (1) denied Stenberg's motion to appoint counsel (ECF No. 26) and (2) administratively stayed the case as to Defendants Wellpath, Bomber, Coleman, and Massey (ECF No. 27). In her order staying the case as to the Wellpath Defendants, Judge Altman advised that she would not rule on Stenberg's motion for a preliminary injunction until all defendants had the opportunity to appear and respond. (ECF No. 27, PageID.1407 ("[A]s to the unserved defendants, the motion for a preliminary injunction is premature. Once they are served and appear, the Court will direct them to file a response to Stenberg's motion. As to Wellpath and the Wellpath Defendants, once the stay is lifted, the Court will direct them to file a response to the motion.").) By April 28, 2025, all Defendants, save for Howard and the Doe Defendants, had been served and the stay was due to expire. Accordingly, Judge Altman ordered all defendants to respond to Stenberg's motion for a preliminary injunction by May 8 (ECF No. 40) and they did (ECF Nos. 43, 46, 47).

3

**B.**

On May 22, 2025, Judge Altman issued a Report and Recommendation to deny Stenberg's motion for a preliminary injunction (ECF No. 12) and his motion to compel a decision (ECF No. 18). In her report, Judge Altman noted that, "[a]s a preliminary matter, Wellpath, Bomber, Ouellette and Groff have indicated in their response that after Wellpath's contract with MDOC was terminated on May 1, 2024, none of them have been responsible for Stenberg's medical care," and so because "they are no longer responsible for Stenberg's medical care, a preliminary injunction" would not be appropriate. (ECF No. 48, PageID.1668.)

As for the other defendants, Judge Altman found that "Stenberg has not shown that he is likely to succeed on the merits." (*Id.* at PageID.1699.) Indeed, "even assuming Stenberg has serious medical needs," he fails to explain why "the care provided was 'grossly or woefully inadequate.'" (*Id.* (quoting *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021).) And the medical records attached to Defendants' response, Judge Altman reasoned, demonstrate that while Stenberg has "been on various medications," "there are multiple documented instances of Stenberg refusing to take his medications and otherwise refusing care and missing appointments." (*Id.* at PageID.1670.)

Regarding irreparable harm, Judge Altman explained that not only did Stenberg fail to show "that his constitutional rights have likely been violated," but "he does not indicate that there is specific harm that will befall him should the Court not enter an injunction." (*Id.* at PageID.1672 (quoting *Rhinehart v. Scutt*, 509 F.

App'x 510, 514 (6th Cir. 2013).) Finally, Judge Altman explained that, "significantly, Stenberg has not shown that the public interest would be served by granting the injunction." (*Id*.) As she explained, "in the prison setting, 'the interests of identifiable third parties and the public at large weigh against an injunction.'" (*Id*. (quoting *Theriot v. Woods*, No. 18-CV-92, 2019 WL 409507, at *11 (W.D. Mich. Feb. 1, 2019).) And here, Stenberg "asks the Court to interfere substantially in prison administration" by ordering officials to "take him only to off-site providers who have no affiliation with MDOC" and "follow the exact orders of those providers." (*Id*. at PageID.1673.)

Judge Altman's report and recommendation (ECF No. 48) and Stenberg's objections (ECF No. 60) are now before the Court.

## II.

When a party objects to a magistrate judge's report and recommendation, a district judge reviews *de novo* those portions to which the party has objected. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). The Court has no obligation to review un-objected to issues. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Garrison v. Equifax Info. Servs., LLC*, No. 10-13990, 2012 WL 1278044, at *8 (E.D. Mich. Apr. 16, 2012); *see also Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) ("The district court need not provide de novo review where the objections are frivolous, conclusory or general. The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." (cleaned up)). To that end, the Court must review at least the evidence that was before the magistrate judge, then

may accept, reject, or modify the findings and recommendation. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981); Fed. R. Civ. P. 72(b)(3). The Court may adopt the magistrate judge's report without specifying what it reviewed. *Abousamra v. Kijakazi*, 656 F. Supp. 3d 701, 705 (E.D. Mich. 2023) ("If the court will adopt the R&R, then it may simply 'state that it engaged in a *de novo* review of the record and adopts the [R&R]' without 'stat[ing] with specificity what it reviewed.'" (alterations in original) (quoting *United States v. Robinson*, 366 F. Supp. 2d 498, 505 (E.D. Mich. 2005))).

## III.

Reminiscent of his opening 500-plus page complaint, and showing no aptitude or appreciation for a less-is-more approach, Stenberg makes twenty-three objections to Judge Altman's report. Broadly, they can be organized into two categories.

In the first category are Stenberg's objections to the more technical aspects of the report. For example, he objects to Judge Altman's inclusion of Bryan Morrison as a defendant, even though Morrison was not listed as a defendant in his second amended complaint. (ECF No. 60, PageID.1877; *see* ECF No. 14, PageID.1152.) He also objects to Judge Altman's assertion that he filed his amended complaint and motion for a preliminary injunction on January 15, 2025, when he really mailed these documents to the courthouse on December 26, 2024. (*Id.* at PageID.1878–1879.) Likewise, he argues that Judge Altman erred when she issued her report seven days after the Defendants' response, thus not giving him time to file a reply. (*Id.* at PageID.1877–1878.)

6

But these objections are issues of form, not substance. As Defendants put it, Stenberg "does not explain how [these] alleged error[s] affected the outcome of the Court's report and recommendation or how curing [the alleged errors] would result in a different outcome." (ECF No. 64, PageID.1916.) Judge Altman made no specific decision as to Bryan Morrison, nothing in Judge Altman's report and recommendation hinged on when Stenberg mailed his complaint and motion, and Judge Altman was within her discretion to not allow Stenberg to file a reply brief—especially in light of his pending motion to compel a decision. *See, e.g.*, *Convertino v. U.S. Dep't of Just.*, No. 07-13842, 2008 U.S. Dist. LEXIS 107800, at *2 (E.D. Mich. Nov. 21, 2008) ("[T]he court is not required to wait for, or consider, a reply brief if the issues are sufficiently clear after considering a motion and response."); *Williams v. Massey*, No. 24-12435, 2025 U.S. Dist. LEXIS 33702, at *5 (E.D. Mich. Feb. 25, 2025) ("Undersigned thus appropriately exercised her discretion when she issued the R&R without first waiting to see whether [plaintiff] would file a reply."). Moreover, any disagreements Stenberg has with Judge Altman's report can be (and here, were) raised via objection. So the Court will overrule this group of objections.

As for the second category, Stenberg makes several objections to Judge Altman's analysis of the preliminary injunction factors. Primarily, he argues that Judge Altman does not explain "exactly how [he] has not shown he is likely to succeed on the merits." (*Id.* at PageID.1887; *id.* at PageID.1886 ("[H]ow can anyone say Plaintiff has failed to show he is likely to succeed on the merits.").)

In determining whether to grant preliminary injunctive relief, the Court must weigh four factors: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent preliminary injunctive relief, (3) whether granting the preliminary injunctive relief would cause substantial harm to others, and (4) whether the public interest would be served by granting the preliminary injunctive relief." *A&W X-Press, Inc. v. FCA US, LLC*, No. 21-1805, 2022 WL 2759872, at *3 (6th Cir. July 14, 2022). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Handel's Enters., Inc. v. Schulenburg*, 765 F. App'x 117, 121 (6th Cir. 2019) (citing *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000)).

The Court finds that Judge Altman did not error in her preliminary injunction analysis. A prison official violates the Eighth Amendment when he acts with "deliberate indifference to an inmate's serious medical needs." *Brawner v. Scott Cnty., Tennessee*, 14 F.4th 585, 591 (6th Cir. 2021). A viable Eighth-Amendment claim has both an objective and subjective prong, requiring the inmate to show that (1) he had an objectively serious medical need that was not treated, and (2) "an official knew of [his] serious medical need and that, despite this knowledge, the official disregarded or responded unreasonably" to it. *Downard for Est. of Downard v. Martin*, 968 F.3d 594, 600 (6th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). As Judge Altman explains, Stenberg's claims fail on both prongs.

Starting with the objective prong, this Court finds that Stenberg does have a sufficiently serious medical need.[1] He alleges, and his medical records demonstrate, that he suffers from chronic pain that requires medication and physician treatment. *See, e.g.*, *Howell v. NaphCare, Inc.*, 67 F.4th 302, 311 (6th Cir. 2023) ("An objectively serious medical need includes conditions that have been diagnosed by a physician as mandating treatment.") (internal quotation omitted); *Boretti v. Wiscomb*, 930 F.2d 1150, 1154 (6th Cir. 1991) (finding that enduring physical pain and mental anguish constitutes a sufficiently serious medical need). But he does not establish that this serious need was untreated.

True enough, "[a] serious medical need alone can satisfy" the objective prong "if doctors effectively provide no care" for the pain. *Tangilag*, 14 F.4th at 534. But often, as is the case here, doctors do provide *some* care and prisoners challenge that care as inadequate. In that scenario, to satisfy the objective prong, prisoners like Stenberg must demonstrate that the care received was "gross or woefully inadequate." *Tangilag*, 14 F.4th at 535; *Brown v. Kline*, No. 24-4098, 2025 U.S. App. LEXIS 16156, at *5 (6th Cir. June 30, 2025) ("The objective prong requires that the prisoner have a sufficiently serious medical need that was not treated or for which the treatment provided was grossly or woefully inadequate.") (internal quotation omitted). "[A]s a general rule, where a plaintiff has received care, he will not be able

---

[1] The Court notes that, despite Stenberg's assertions otherwise (*see* ECF No. 60, PageID.1887–1888), Judge Altman likewise assumed that Stenberg has serious medical needs (s*ee* ECF No. 48, PageID.1669). She simply concluded that despite these serious needs, Stenberg was still unlikely to succeed on the merits of his claims.

to sustain a claim of deliberate indifference." *Scutt*, 509 F. App'x at 514. Indeed, when a prisoner challenges prison doctors' treatment choices, care only qualifies as "cruel and unusual" if it is "so grossly incompetent or so grossly inadequate as to shock the conscience or be intolerable to fundamental fairness." *Tangilag*, 14 F.4th at 535 (citation omitted).

In his objection, Stenberg claims that the issue is not that he was provided inadequate care, but that he was provided no medical treatment at all. (ECF No. 60, PageID.1889 ("[T]he argument is that [Stenberg] has received no care at all—not some care that is inadequate but no care at all. The Magistrate Judge cannot appear to grasp this is the basis of the request for injunctive relief as she keeps repeatedly going back to her assertion that some care [was provided].").) But a review of Stenberg's extensive medical records shows that assertion is simply inaccurate. Instead, as Judge Altman found, there is ample evidence that Stenberg was receiving medical treatment in prison, including access to prescription medication to deal with his back and stomach pain. (*See* ECF No. 47-1, PageID.1606–1610.) Likewise, Stenberg was given medical equipment such as a wheelchair, wheelchair gloves, prescription shoes, sun protective clothing, glasses and eyedrops, and extra pillows. (*Id.* at PageID.1605.)[2] Far from receiving no medical care at all, Stenberg had several

---

[2] In his amended complaint, Stenberg alleges that Defendant Groff told him back in 2022 that he was being discharged from the CHOICES program, and that as a result he would lose access to special accommodations like wheelchair gloves and sunblock, among other things. (ECF No. 14, PageID.1198–1199.) But the medical detail special accommodations form provided by Defendants (which was generated in May 2025) indicates that Stenberg should continue to have access to sunblock and

counseling sessions on various medical topics. And when he submitted healthcare kites to prison staff, he received prompt responses. (ECF No. 47-1, PageID.1588–1604.)

Just as significant, the clinical notes written by prison staff reveal that Stenberg has a history of refusing medical care. The records are replete with examples of Stenberg refusing to take prescribed medication or nutritional supplements (*see, e.g.*, *id.* at PageID.1613, 1614, 1616, 1649, 1652) as well as declining to attend scheduled appointments (*see, e.g.*, *id.* at PageID.1642, 1644, 1646). Stenberg provides no contradictory medical evidence to suggest that the care provided to him has been so inadequate as to "shock the conscience or be intolerable to fundamental fairness." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018); *see Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (finding that if a prisoner's claim is based on the prisons failure to treat a condition adequately, there must be "medical proof that the provided treatment was not an adequate medical treatment of [the inmate's] condition or pain.").

As for the subjective prong, "[a] doctor's errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference." *Scutt*, 894 F.3d at 738. Instead, a prisoner must show that each defendant "subjectively perceived facts from which to infer substantial risk to the prisoner," drew that inference, and "then disregarded that risk" by failing to take reasonable measures to abate

---

his wheelchair gloves until at least July and November 2025, respectively. (ECF No. 47-1, PageID.1605.)

11

it. *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001); *Brawner*, 14 F.4th at 591 ("To meet the subjective component, the plaintiff must show that an official knew of and disregarded an excessive risk to inmate health or safety.") (cleaned-up).

Stenberg's allegations again fall short. Stenberg argues that Dr. Coleman subjectively disregarded a substantial risk to his health because Dr. Coleman originally "approved [him] to go to Hillsdale Hospital Pain Clinic for a cervical epidural thus acknowledging that plaintiff was in pain, but when the procedure could not be done due to [his] extreme degree of [functional movement disorder] Dr. Coleman refused to acknowledge the Plaintiffs' pain to prescribe pain medication that would be effective." (ECF No. 12, PageID.1126–1127.) To support this argument, Stenberg points the Court to several medical documents he attached to his initial complaint. (*Id*.)

But a review of those documents does not support Stenberg's argument. To the contrary, it seems that Stenberg was evaluated at Hillsdale Hospital, and that medical staff determined that he was not a candidate for a cervical epidural "due to his involuntary tonic colonic movements." (ECF No. 1-4, PageID.410.) Nothing in that document, however, suggested or recommended prescribing prescription pain medication.[3] Later, Nurse Groff completed a "non-formulary drug authorization"

---

[3] The pain clinic notes state that "[S]tenberg is to see a movement disorder specialist at the University of Michigan" and that "[Stenberg] was encouraged if his neck pain does not improve to see Neurosurgery for an anterior cervical diskectomy if needed." (ECF No. 1-4, PageID.410.) As for recommended "therapies," medical staff recommended "[h]ome exercise and ice therapy and anti-inflammatory medications." (*Id*.)

12

form explaining that Stenberg suffers from "continued neck pain with radiation to the left shoulder and left elbow" and that other therapies and medications had not been effective. (ECF No. 1-4, PageID.468.) Groff suggested that Stenberg be prescribed Hydrocodone ("Norco"). (*Id.*) On the second level of review, however, it seems that Dr. Coleman did not approve the prescription, commenting that there was "no medical indication for a narcotic." (ECF No. 1-4, PageID.469.)[4]

Dr. Coleman's decision not to recommend this specific narcotic does not constitute deliberate indifference. As Defendants put it, Stenberg "confuse[s] his disagreement with his treatment plan and the decision not to blindly provide him with narcotic pain medication with not having been provided any care at all." (ECF No. 64, PageID.1925.) And this Court is "reluctant to second guess [the] medical judgments" of Dr. Coleman. *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see Owens v. Hutchinson*, 79 F. App'x 159, 161 (6th Cir. 2003) ("A patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim"). Thus, the Court agrees with Judge Altman's conclusion that Stenberg did not show that "Coleman knew he faced a

---

[4] It is not entirely clear to the Court what the ultimate resolution of the non-formulary drug authorization request was. From what the Court can tell, Groff initiated the request, then it went through one layer of review where the action taken is listed as "refer up." (ECF No. 1-4, PageID.468.) The same day, Dr. Coleman wrote that there was no need for a narcotic and wrote that he would "defer." (*Id.*) And the third level of review was left blank. (*Id.*) But the list of medications prescribed to Stenberg that was provided by Defendants does not list Hydrocodone. (ECF No. 47-1, PageID.1606–1610.) So the Court assumes this specific narcotic was ultimately not prescribed.

13

substantial risk of harm and then chose to disregard that risk" and that Stenberg's complaint boils down to a disagreement over his treatment plan.

Similarly, Stenberg objects to Judge Altman's conclusion that Dr. Blessman did not act with deliberate indifference. Judge Altman found that Stenberg did not aptly explain "how Blessman, who does not personally see patients, was responsible for providing him pain relief." (ECF No. 48, PageID.1671.) Stenberg's objection highlights several places in his complaint where he references Dr. Blessman. (ECF No. 60, PageID.1893.) But what Stenberg fails to grapple with is his own assertion in his motion for a preliminary injunction that Dr. Blessman is "an administrator who never personally sees patients." (ECF No. 12, PageID.1125–1126.) In any event, after reviewing Stenberg's complaint and motion for injunctive relief the Court agrees that he fails to demonstrate that Dr. Blessman knowingly disregarded a substantial risk to his health. Instead, Stenberg merely complains that, as the head of the Pain Management Clinic, Dr. Blessman should prescribe morphine instead of instituting an alternative treatment plan. (ECF No. 14, PageID.1223.) But, again, "where, as here, the plaintiff has received medical attention, but disputes the adequacy of that treatment, a federal court will not second-guess the medical judgments of prison officials and constitutionalize claims that sound in state tort law. *Norris v. William*, No. 16-2545, 2017 U.S. App. LEXIS 21070, at *7 (6th Cir. Oct. 23, 2017) (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)); *see also Rhinehart*, 509 F. App'x at 513 ("Neither negligence alone, nor a disagreement over the wisdom or correctness of a medical judgment is sufficient for the purpose of a deliberate

14

indifference claim.") Nor is it clear from the record that, as an administrator, Dr. Blessman had any real involvement in Stenberg's treatment at all. Not enough for the Court to find a likelihood of success on the merits.

Finally, Stenberg also argues that Judge Altman's preliminary injunction analysis "centers only on the success of the merits and ignores the irreparable harm factor." (ECF No. 60, PageID.1879.) Not so. Judge Altman specifically found that Stenberg has not "shown that he is likely to suffer irreparable harm in the absence of an injunction" because he "does not indicate that there is a specific harm that will befall him should the Court not enter an injunction." (ECF No. 48, PageID.1671–1672.) That is supported by the record. Rather than identify the irreparable harm, Stenberg's motion just argued that "Defendants have violated his constitutional right against cruel and unusual punishment" and that "no amount of money can fully compensate [him] for his suffering." (ECF No. 12, PageID.1131.) But, as discussed, Stenberg "has not shown that his constitutional rights have likely been violated." (ECF No. 48, PageID.1672.) Nor has he shown that an Eighth Amendment violation will result if the Court does not enjoin Defendants from having any "involvement" in his medical care. (*See* ECF No. 12, PageID.1133.) Accordingly, the Court will overrule Stenberg's objections to Judge Altman's preliminary injunction analysis.

## IV.

For the reasons above, the Court will OVERRULE Stenberg's objections (ECF No. 60) and adopt Judge Altman's report and recommendation (ECF No. 48) in full.

Accordingly, Stenberg's motion for a preliminary injunction (ECF No. 12) is DENIED and his motion to compel is DENIED as moot (ECF No. 18).

     SO ORDERED.

     Dated: July 16, 2025

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
